UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:21-CR-71 |
| ) | |
| HAILEY GIST-HOLDEN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Pro se defendant, Hailey Gist-Holden, seeks the suppression of evidence obtained through search warrants filed on March 3, 2022 for cell phones ending in x1806 (Case No. 22 MJ 23), x9862 (Case No. 22 MJ 24), x8197 (Case No. 22 MJ 25), x9762 (Case No. 22 MJ 26), and x6121 (Case No. 22 MJ 27). [DE 147.] Gist-Holden seems to argue that the government already had information relating to these phones back in June of 2021, and therefore the 2022 warrants are somehow tainted. [DE 147 at 1.] Although the government stated in court on March 7, 2022, that it obtained some telephone information without a search warrant and instead relied on the exigent circumstances, the government clarified in court on August 22, 2022, that the original cell phone data was obtained through warrants. After reviewing the briefing in this matter, I find that the March 2022 search warrants were supported by probable cause, were not tainted by any earlier alleged illegality, and were therefore entirely valid.

## Background

This case involves an armed robbery that occurred on June 11, 2021. The

government alleges that Gist-Holden and his co-defendant, James King, killed the security guard at the First Midwest Bank in Gary, Indiana, and then ran into the bank and collected money.  After robbing the bank, the men fled.  King was apprehended in the nearby woods, but Gist-Holden led authorities on a multi-day and multi-state pursuit across the country.  Gist-Holden was arrested six days later, on June 17, 2021, in Georgia.

As detailed by the government in its response [DE 183], the government had reason to believe that Gist-Holden was involved in the robbery and murder so it undertook a number of investigative actions to locate him:

*First*, the government obtained three warrants for cell phone data and information in June of 2021, in an effort to locate Gist-Holden right after the bank robbery.  The warrants were supported by probable cause.  For example, FBI Special Agent Jacob McAdams submitted an affidavit in support of the application for the first search warrant on June 12, 2021. [Case No. 2:21-mj-100, DE 1.]  He included the following facts in support of probable cause for the target telephone: after the robbery, co-defendant King was discovered during a perimeter search of the woods near the bank. [*Id.* at 5.] The officers apprehended King and found a nearby backpack containing approximately $9,000 and a Glock model 22 handgun.  *Id.*  King was transported to the Lake County Jail and interviewed. [*Id.* at 6.]  King then admitted to participating in the robbery, but told authorities that Gist-Holden was the person who shot the security guard. *Id.*  King said he knew Gist-Holden from his semi-professional football team.  *Id.*

2

Investigation confirmed King played football at the semi-professional level for the Illini Panthers, and Gist-Holden was also listed on the roster for the Illini Panthers. *Id.* King identified Gist-Holden in a photo line-up as the person who was his accomplice in the robbery and shot the security guard. *Id.* Law enforcement databases showed that the target telephone was attributable to Gist-Holden. [*Id.* at 7.] The handgun recovered from the backpack near King's arrest was purchased by Briana White, who was listed in a database as the co-parent of a minor with Gist-Holden, and they had shared addresses at various times. *Id.* Agent McAdams submitted a similar affidavit in support of the other warrant. [Case No. 2:21-mj-102, DE 1.] And FBI Task Force Officer Chris Gootee submitted an affidavit for the third warrant, including information about a U-Haul van Gist-Holden was driving during his flight. [Case No. 2:21-mj-105, DE 1.]

After reviewing the government's applications, the magistrate judge issued the following search warrants:

(1) On June 12, 2021, for a phone with a number ending in x9762 (Case No. 2:21-mj-100, bates stamp 12196). The number was attributed to Gist-Holden in law enforcement databases and the warrant sought real-time and prospective data as to the location of the cellular device. It also sought historical information about who owned the phone, where it was registered, and its call records.

(2) On June 14, 2021, for the same phone number ending in x9762 (Case No. 2:21-mj-102, bates stamp 12119) seeking call and wire detail records, but not including the content of communication, for the previous three months.

(3) On June 16, 2021, for a phone number ending in x1806 (Case No. 2:21-mj-105, bates stamp 270), which was a phone number that investigators learned Gist-Holden was using during his flight, seeking real time location information and cell site data.

[DE 183 at 2.] None of those warrants sought historical cell site information which is "location information generated by a cell phone. When the phone is powered on, it sends and receives signals from the tower with the strongest signal; that cell tower is usually the one closest to the phone." *United States v. Rosario*, 5 F.4th 706, 709 (7th Cir. 2021).

*Second*, the government also sought pen registers and trap-and-trace devices.[1] Specifically, the government obtained Court orders pursuant to 18 U.S.C. §§ 3122 and 3123 for pen registers and trap-and-trace devices for the following devices of Gist-Holden:

(1) On June 12, 2012, for the x9762 phone number (2:21-mj-100, 2:21-mc-35, bates stamp 12631-12640, 12642-12655, 17618-17625); and

(2) On June 16, 2021, for the x1806 number (2:21-mj-105, 2:21-mc-37, bates stamp 270, 12183).

[DE 183 at 3.] These applications sought to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the relevant devices. *Id.* They also did not seek historical cell site information.

*Third*, the government made use of grand jury subpoenas seeking information on the following phone numbers: x9862 (Gist-Holden), x8197 (Gist-Holden), and x6121 (co-defendant White). A grand jury subpoena was also sent to a provider for the number

---

[1] A pen register records certain outgoing electronic signals, whereas a trap-and-trace device captures incoming ones. *See United States v. Soybel*, 13 F.4th 584, 586 n.2 (7th Cir. 2021) (citing 18 U.S.C. § 3127(3)-(4)).

4

x2203, which was a number possibly associated with Gist-Holden's mother.  These subpoenas sought information such as subscriber information, IP addresses, identifying information about method payment, and phone identifiers. [DE 183 at 3.]

And *fourth,* in addition to information the government sought about defendant Gist-Holden, the government also obtained the information on the following third parties:

(1) On June 17, 2021, an order for a pen register and trap-and-trace for phone numbers associated with King and White (Case No. 2:21-mc-38, bates stamp 12171);

(2) Around June 18, 2021, a search warrant was obtained for King's phone data for phone number x8929 (2:21-mj-106, bates stamp 12230).  This warrant sought real time data for the phone's location.  The government also got a warrant seeking historical data for the same number (Case No. 2:21-mj-107, bates stamp 12138) and a pen register and trap-and-trace device (bates stamp 12220).

[DE 183 at 4.]

Based on all of these investigative efforts, Gist-Holden was caught and detained in Georgia on June 17, 2021; both he and James King were charged the following month. [DE 20.] Notwithstanding the fact that Gist-Holden and King were in custody and under indictment, the government, believing that others were involved in the plot, continued to investigate the case.  (Indeed, co-defendants Kenyon Hawkins and Brianna White were not charged until nine months later, on April 21, 2022. [DE 152.]) In that regard, additional search warrants were sought and obtained by the government  in March 2022.  It is the evidence obtained from those warrants that Gist-Holden challenges in his present motion to suppress.

5

The warrants obtained in March 2022 were supported by the probable cause discussed above as well as additional evidence including: details of the robbery; the financial difficulty of the Illini Panthers football team; a photo and details of a planning meeting with Gist-Holden, King, Hawkins, and White that happened before the robbery; motive evidence that Gist-Holden was behind on his rent; the determination by a forensic examiner that spent cases found in Gist-Holden's home and at the scene were determined to have been cycled through the same firearm; and evidence that White downloaded a police scanner app which she listened to during the robbery while on a telephone call with Gist-Holden. [Case No. 2:22-mj-23, DE 1; Case No. 2:22-mj-24, DE 1;  Case No. 2:22-mj-25, DE 1;  Case No. 2:22-mj-26, DE 1; Case No. 2:22-mj-27, DE 1.] It was in these warrants that the government for the first time sought historical cell site information for the following phones:

>   (1) x1806 (Gist-Holden) (Case No. 2:22-mj-23, bates stamp 00028880-28883);

>   (2) x9862 (Gist-Holden) (Case No. 2:22-mj-24, bates stamp 00025819-25834);

>   (3) x8197 (Gist-Holden) (Case No. 2:22-mj-25, bates stamp 00025842-25865);

>   (4) x9762 (Gist-Holden) (Case No. 2:22-mj-26, bates stamp 00025866-25889); and

>   (5) x6121 (White) (Case No. 2:22-mj-27, bates stamp 00025890-25914).

[DE 183 at 4.]  Also on April 20, 2022, the government obtained a warrant for King's phone number (x8929) seeking cellular records from May 7, 2021 through June 18, 2021 (Case No. 2:22-mj-48, bates stamp 33820).  *Id.*

In summary, Gist-Holden presently moves to suppress the historical cell site

information gathered from the search warrants in March 2022, claiming the information was illegally obtained. But because the warrants were supported by an abundance of probable cause, and were untainted by any earlier alleged illegality, his motion will be denied.

## Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV. To conduct a "search" under the Fourth Amendment, an officer generally must obtain a warrant supported by probable cause. *See Katz v. United States*, 389 U.S. 347, 359 (1967).

Gist-Holden is correct that generally, the government needs a search warrant to obtain historical cell site information. *See United States v. Hammond*, 996 F.3d 374, 385 (7th Cir. 2021) (citing *Carpenter v. United States*, 138 S. Ct. 2206 (2018)). In 2018, the Supreme Court held in *Carpenter* that "an individual maintains a legitimate expectation of privacy in the record of his physical movement as captured through CSLI [cell-site location information]." *Carpenter*, 138 S. Ct. at 2217. In this case, as spelled out in the background section of this order, the government *did* obtain search warrants to get historical cell site data.

The *Carpenter* court explicitly left open the question of whether the collection of

real-time cell site information constitutes a "search" under the Fourth Amendment. *Carpenter*, 138 S. Ct. at 2220; *Hammond*, 996 F.3d 374, 387 (7th Cir. 2021) (noting that "seizing CSLI in real-time only reveals a person's whereabouts at the moment of its seizure" and not deciding the issue either). Regardless, the government obtained warrants in June 2021 when using real-time cellular information to try to locate Gist-Holden's whereabouts after the crime [DE 183 at 2], so it clearly satisfied all legal requirements regarding these first searches. I note that even if the government hadn't received these early warrants, searching the phone records when trying to locate Gist-Holden who was fleeing across the country after a bank robbery which resulted in a murder, would also undoubtedly be authorized under the exigent circumstances doctrine as well. *See United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) ("where police reasonably believe that their safety, or the safety of the public, may be threatened, exigent circumstances exist."); *Kentucky v. King*, 563 U.S. 452, 460 (2011) (finding exigent circumstances exist, for example, when officers "are in hot pursuit of a fleeing suspect.").

As to the pen register and trap-and-trace devices, courts have been clear that obtaining information by these means under 18 U.S.C. §§ 3122 and 3123 (statutes detailing the application requirements for the issuance of an order for a pen register or a trap-and-trace device) is not a "search" under the Fourth Amendment and therefore not subject to its warrant requirements. *Smith v. Maryland*, 442 U.S. 735, 745-46 (1979); *see also Soybel*, 13 F.4th at 590-94. Since the government complied with the statute in

8

receiving this information, this information is not subject to suppression.

Regarding the information collected from other people's phones, Gist-Holden does not have standing to challenge the extraction of information from those phones. *See, e.g., United States v. Gibson*, 996 F.3d 451, 462 (7th Cir. 2021) (stating the court was "skeptical" the defendant had standing to challenge cell phones he didn't possess during the relevant period); *United States v. Beaudion*, 979 F.3d 1092, 1096-98 (5th Cir. 2020) (holding no reasonable expectation of privacy in others' phones).  Regardless, even if Gist-Holden had standing to challenge the government collecting information from King and White's cell phones, the government still complied with the Fourth Amendment by getting search warrants supported by probable cause, and adhered to the relevant statutes by getting the trap-and-trace/pen register orders.

As with the earlier search warrants, the warrants obtained in March 2022 that Gist-Holden challenges were obtained by valid means through an application supported by probable cause and presented to a neutral and detached magistrate judge. [DE 183 at 4.] Even if there were some infirmity with those warrants, and I see none, the government would nevertheless be allowed to rely on those warrants in good faith.  *See United States v. Leon*, 468 U.S. 897 (1984).  Therefore, there is no basis to suppress the evidence obtained through those warrants.

Finally, Gist-Holden's argument that the government illegally "hacked" his phones to obtain the information that was ultimately obtained by the 2022 warrants is misguided. [DE 147 at 1.]  The government used the 2022 warrants to get historical cell

9

site information from the third party cell phone providers.  *See Carpenter*, 138 S. Ct. at 2211-12.  That information was in the hands of the cellular providers, not Gist-Holden's phone, and thus nothing was "hacked" off of his phones.

For all of these reasons, the historical cell site information obtained pursuant to the 2022 warrants is valid, and admissible at trial.

## Conclusion

For the aforementioned reasons, Gist-Holden's Motion to Suppress [DE 147] is DENIED.  The Clerk is ORDERED to mail a copy of this order to Gist-Holden at his institution.

ENTERED: August 29, 2022

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT