UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:21-cr-71 |
| | ) | |
| HAILEY GIST-HOLDEN, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

After being convicted of murdering a security guard during the commission of a bank robbery, defendant, Hailey Gist-Holden, moved for a new trial under Federal Rule of Criminal Procedure 33. [DE 389.] The motion fails for two reasons: It's both untimely and meritless.

**Background**

The superseding indictment alleges that Gist-Holden and his co-defendant, James King, killed the security guard at the First Midwest Bank in Gary during an armed robbery on June 11, 2021. [DE 20.] After robbing the bank, the men fled. King was apprehended in the nearby woods, but Gist-Holden led authorities on a multi-day and multi-state pursuit across the country. Gist-Holden was ultimately arrested six days later, on June 17, 2021, in Georgia.

1

Co-defendant James King pleaded guilty to Counts 1 and 2 of the superseding indictment. [DE 132, 138.] The government then filed a second superseding indictment against defendants Gist-Holden, Kenyon Hawkins (who ultimately admitted to being the getaway driver), and Briana White (Gist-Holden's fiancé and the mother of his children, who allegedly listened to the police scanner during the robbery to give Gist-Holden and King real time notice when the authorities were approaching). [DE 152.] Briana White moved to sever her trial from the other three, and I granted her request due to mutually antagonistic defenses; she is awaiting trial. [DE 207, 230.] Then, defendant Kenyon Hawkins pleaded guilty. [DE 243, 249.] Both King and Hawkins cooperated with the government and testified against Gist-Holden at his trial that began on October 17, 2022.

Despite repeated warnings of the peril of representing oneself, Gist-Holden still insisted on doing just that, and the court appointed him standby counsel who assisted him with pretrial matters like subpoenaing documents and witnesses for trial and was present and assisted during trial. [DE 39, 60, 136, 284.] Following a 9-day jury trial, Gist-Holden was found guilty on both counts: armed bank robbery causing a death (Count 1) and use of a firearm during a crime of violence resulting in murder (Count 3). [DE 316.]

The government put on evidence that Gist-Holden was a part-owner and coach of a minor league football team, the Illini Panthers, and he needed money for the team

2

(to pay for team members' hotel rooms and other incidentals).  The day of the robbery, Gist-Holden went to the hotel where the football team was staying, and brought back players Hawkins and King to the home he shared with White and their children.  Then, Gist-Holden led the group in planning the bank robbery.  During the planning meeting, King sent a photograph that he took with his phone (which was a "LivePhoto" and included a few seconds of video) to a teammate.  When the LivePhoto was admitted during trial, Gist-Holden did not object.  [DE 356 at 146-47.]  The live video portion of the photograph captures Kenyon Hawkins saying, "Come on, James."  *Id.*  Hawkins testified at trial that it was his voice on the clip, and he was encouraging his co-defendant (James King) to participate in the robbery.  [DE 369 at 37.]  Gist-Holden appears pictured in the photograph holding a firearm.  [*Id.* at 36.]

Through the compelling testimony of Hawkins and King, the government established at trial that the three men left Gist-Holden's home with two firearms (a Glock handgun and an AR style rifle), and they rode to the nearby First Midwest Bank in a U-Haul van that Gist-Holden had rented.  After being dropped off in the area of the bank by Hawkins, King and Gist-Holden walked through a wooded area towards the bank.  The bank security footage shows Gist-Holden shooting the security guard, Richard Castellana, on the sidewalk outside the bank.  Mr. Castellana died on the scene.  King then ran into the bank and took about $9,000 while Gist-Holden fired more shots into the bank, shattering glass windows.  The handgun and money were found in a

backpack in the woods nearby where King was apprehended. However, the rifle used in the robbery was never recovered. According to Hawkins (the getaway driver), he and Gist-Holden dismantled the weapon and discarded it piece by piece on their flight away from the area. However, shell casings found at the scene of the robbery and those found at Gist-Holden's apartment were, according to the government's ballistics expert, cycled through the same weapon.

Although Gist-Holden was convicted last October, he filed the present motion for a new trial under Rule 33 on March 28, 2023. [DE 389.] The motion contains a slew of reasons Gist-Holden believes his trial was unfair, including perjured testimony from his co-defendants King and Hawkins, what he claims is a doctored photograph, prosecutorial misconduct, evidence which should have been barred from trial, flawed jury selection, and his claim that he was prevented from presenting all the testimony that he wanted to at trial. Gist-Holden claims that all of these issues are based on "newly discovered evidence."

## Discussion

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quotation omitted). In other words, "the exercise of power conferred by Rule

4

33 is reserved for only the most extreme cases." *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017) (quotation omitted). A district court may "weigh evidence, evaluate credibility, and grant the motion if the substantial rights of the defendant have been jeopardized." *United States v. Eberhart*, 388 F.3d 1043, 1052 (7th Cir. 2004) (citation omitted), *vacated on other grounds*, 546 U.S. 12 (2005). A new trial is appropriate only "where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand." *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017) (quotations and citation omitted). In other words, the court may only order a new trial if "the verdict is against the manifest weight of the evidence" and would result in a "miscarriage of justice." *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999).

In looking at the timeliness of Gist-Holden's motion, Rule 33(b)(1) provides that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty . . . ." Additionally, Rule 33(b)(2) provides that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." In this case, the jury verdict was returned on October 27, 2022. [DE 323.] Gist-Holden's motion was not filed until around 5 months later, on March 28, 2023. Therefore, unless Gist-Holden can show that his motion is based on newly discovered evidence, it is untimely.

A defendant moving for a new trial based on newly discovered evidence must show the new evidence: "(1) was discovered after trial, (2) could not have been discovered sooner through the exercise of due diligence, (3) is material and not merely impeaching or cumulative, and (4) probably would have led to acquittal." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (citation omitted). "The recantation of an important witness fits this description; new DNA analysis or other scientific evidence also would come within Rule 33." *United States v. Rollins*, 607 F.3d 500, 504 (7th Cir. 2010). Gist-Holden has not set forth any new evidence at all. *See United States v. Fuller*, 421 F. App'x 642, 644-45 (7th Cir. 2011) (upholding district court finding that a pro se motion for a new trial was untimely because the evidence presented was not new, and thus the shorter time period applied); *United States v. Cavendar*, 228 F.3d 792, 802 (7th Cir. 2000) (affirming district court's denial of new trial because defendant filed his motion outside the Rule 33 time limits).

### I. The Motion is Untimely

Gist-Holden's 62-paragraph motion for a new trial lists a slew of reasons he believes his trial was unfair, but he does not articulate any "new evidence" that he discovered after trial, much less any new evidence that is also material and probably would have led to acquittal. Let's look at the categories of arguments he sets forth in his motion.

### A. False or Perjured Testimony

First, Gist-Holden argues the government used false or perjured testimony. He gives many examples of such fraudulent testimony in his motion, including, but not limited to: Kenyon Hawkins and James King presented perjured testimony because Hawkins was not really a get-away driver using Gist-Holden's U-Haul van; Hawkins did not dismantle the firearm; King falsely testified when he said he never told police he left his phone at the hotel; and King lied about hotel bills and rental payments. [DE 389 at 2-5.]

There are two tests for granting a new trial based on newly discovered evidence of false testimony. When the government did not knowingly present false testimony, the defendant must show that "the existence of the perjured testimony (1) came to [the defendant's] knowledge only after trial; (2) could not have been discovered sooner with due diligence; (3) was material; and (4) would probably have led to an acquittal had it not been heard by the jury." *United States v. Ogle*, 425 F.3d 471, 476 (7th Cir. 2005) (citation omitted). That said, where a defendant alleges that the government knowingly presented false testimony, "we remain bound by the standard enunciated by the Supreme Court in *United States v. Agurs*" which holds a new trial is warranted when: "(1) the State presented perjured testimony; (2) the State knew or should have known of the perjury; and (3) there is some likelihood that the testimony could have affected the verdict." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Plus, "alleged perjured testimony must bear a direct relationship to the defendant's guilt or

7

innocence" or "it must relate to a material fact as opposed to some collateral issue." *United States v. Adcox*, 19 F.3d 290, 295, 296 (7th Cir. 1994). Finally, whether a defendant "claims the government knowingly or unknowingly presented perjurious testimony, [he] must present sufficient 'newly discovered evidence' to establish [his] claim," otherwise, the motion must be lodged within the 14-day time limit contained in Rule 33. *Ogle*, 425 F.3d at 476.

Because Gist-Holden repeatedly contends the government knowingly used false testimony and had King and Hawkins lie, the analysis falls under the *Agurs* test. [DE 389 at 1-6, 12.] "Regardless of whether we apply the 'general' test or the 'false testimony' test, mere speculation or conjecture is insufficient to warrant a new trial." *United States v. Reed*, 2 F.3d 1441, 1451 (7th Cir. 1993). Gist-Holden doesn't point to any evidence, much less any newly discovered evidence, that shows King and Hawkins' testimony was false, or that the government knew of the alleged falsity, or induced King and Hawkins to lie. Instead, Gist-Holden's motion teems with conclusory statements that the government had King and Hawkins "manufacture pretrial statements" and had them lie at trial, and knew they lied. [DE 389 at 1-5.] There is nothing to back up this speculation – no affidavits, and no evidence. Gist-Holden's motion falls way short of showing that the government intentionally presented perjured testimony.

8

Moreover, none of this is "new evidence" since this was all known to Gist-Holden well before trial. Gist-Holden maintains he "was not associated with the commission of the crime" therefore, he would have known at the time of trial that Hawkins and King were, according to Gist-Holden, presenting false testimony. [DE 389 at 2.] Gist-Holden cross-examined every witness at trial and could have explored what he believed was false or fraudulent testimony at that time.

### B. Manufactured Evidence

Gist-Holden also claims the government presented fraudulently manufactured evidence to the jury regarding firearm shells found at the scene and shells recovered from his house, but again, this information was available to Gist-Holden well before trial. [DE 389 at 6-7, 18-26.] Some of these arguments were already addressed and rejected by the Court in its lengthy order denying Gist-Holden's motion to suppress firearm identification (or toolmark identification) following a hearing on the issue. [DE 145, 256, 260.] The same rationale goes for Gist-Holden's belief that the government edited and altered his interrogation video that the government presented at trial [DE 389 at 8] and information presented to the jury about cell tower location [DE 389 at 9]. None of this is evidence discovered after trial.

Gist-Holden now claims that the live portion that accompanied the LivePhoto (where Hawkins could be heard saying "come on, James") resulted from the government inducing Hawkins to record that short audio track then fraudulently added

9

to the LivePhoto taken at his house. [DE 389 at 1-2.] Again, this photograph was admitted at trial (in both the photograph format and the live video), and Gist-Holden knew about this evidence at trial. His claim that the government manipulated the video is mere speculation – Gist-Holden did not come into any actual evidence following trial supporting his theory that the government manipulated this photo. Plus, the live portion of the photograph that Gist-Holden so adamantly insists is fraudulently edited and altered contains Hawkins' voice trying to persuade *James King* to participate in the robbery, not Gist-Holden. In other words, there is nothing inherently prejudicial towards Gist-Holden in the recorded portion of the LivePhoto.

### C.  Strict Time Limit for Rule 33 Motions

Gist-Holden has filed this motion pro se; still, the "deadline is rigid." *Eberhart v. United States*, 546 U.S. 13, 19 (2005) (holding Federal Rule of Criminal Procedure 45(b)'s "insistent demand for a definite end to proceedings" applies to Rule 33 motions and makes the time limits inflexible except as stated in the Rule itself); *United States v. Muoghalu*, No. 07 CR 750, 2010 WL 3184178, at *11 (N.D. Ill. Aug. 9, 2010) (citing *Eberhart*, ruling, the court "may not grant a motion for new trial this is untimely under Rule 33 if the prosecutor objects"). Because he has not presented any newly discovered evidence, or evidence he acquired after trial, Gist-Holden's motion must be denied as untimely.

**II.     The Motion Also Fail on the Merits**

Although I am denying the motion for a new trial because it is untimely, even if I had not done so, I would still deny the motion on the merits because the evidence at trial was sufficient to support Gist-Holden's conviction. Indeed, the evidence of Gist-Holden's guilt is overwhelming. As a result, Gist-Holden has not come close to meeting his heavy burden of showing that the verdict is so contrary to the weight of evidence, that a new trial is required in the interests of justice. *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011).

The government produced extremely compelling testimony at trial from Hawkins and King who detailed as first-hand witnesses the planning for the robbery, the ride to the bank in the U-Haul, the actual robbery – with King placing Gist-Holden at the bank and identifying him as the shooter, and the extensive getaway. Moreover, there was video footage from the bank's security camera, cellphone-tower testimony placing Gist-Holden near the bank at the time of the robbery, an expert testified that spent shell casings found at the bank and shells found at Gist-Holden's home were cycled through the same firearm, and compelling testimony from bank employees who were present during the robbery. All of this was more than enough to support a guilty verdict. In an abundance of caution, I will briefly address Gist-Holden's substantive arguments about his trial.

### A.     Violation of Right to Counsel During Interrogation

The court has already addressed the substance of Gist-Holden's objection to the Government's use of his statements made while in custody in Georgia, where he was finally apprehended, and found that Gist-Holden had not unambiguously invoked his right to counsel.  [DE 389 at 14.]  His latest motion simply reincorporates the arguments from his motion to suppress, which I already found unavailing.  [DE 147, 252.]

### B.     Fair Cross Section in the Jury Pool

Gist-Holden also questions the composition of the jury pool, arguing "blacks were disproportionately represented in the jury pool and white jurors that had a family member connected to law enforcement w[ere] over-represented."  [DE 389 at 29.]  In essence, Gist-Holden is making a fair cross-section argument.

Under the Sixth Amendment of the U.S. Constitution, criminal defendants have a "right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). That means that the group of people from which a jury venire is selected must be a fair cross-section of the community.  *United States v. Barry*, 71 F.3d 1269, 1273 (7th Cir. 1995) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). It does not mean that a criminal defendant is entitled to a jury venire or a jury that "mirror[s] the general population." *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001) ("[T]he makeup of any given venire is not significant, provided all rules for selection have been

12

observed.") (internal quotation marks and citation omitted); *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir.1995) ("[T]he Constitution does not require this to ensure representative juries, but rather impartial juries.").

Gist-Holden has failed to establish a prima facie case that his Sixth Amendment right to a venire drawn from a fair cross-section of the community was violated. As the Seventh Circuit has explained:

> [S]uch a showing requires the defendant to demonstrate that the group allegedly excluded is a distinctive part of the community; that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997) (quoting *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir. 1995)). There is no question that Blacks are a distinctive part of the community, but Gist-Holden has not satisfied the other two elements. Gist-Holden did not offer evidence showing a statistical discrepancy between the percentage of Blacks in the jury venire and in the two counties from which potential jurors for Hammond are drawn. He also did not show that any under-representation is due to systematic exclusion of Blacks in the jury selection process.

Finally, the jury venire here was selected under the Northern District of Indiana's Jury Selection Plan for Grand and Petit Jurors, which was approved by the court on February 4, 2022 (available at: www.innd.uscourts.gov/sites/innd/files/JurySelectionPlan.pdf.) The plan provides

13

for the random selection of potential jurors for cases in Hammond from general election voter registration lists in Porter County and Lake County.  Before adopting the plan, the judges in this district found that general election voter registration lists "represent a fair cross section of the community in this District." (*Id.* at 4.)  And the Seventh Circuit has upheld "the use of voter registration lists as the source of names for jury venires in this Circuit." *Ashley*, 54 F.3d at 314 (collecting cases).  The Jury Selection Plan itself expressly prohibits the exclusion of citizens on the basis of race.  (Plan at 4.)  The Seventh Circuit has upheld the use of voter rolls to select a venire — the same process used here.  *United States v. Smith*, 223 F.3d 554, 569 (7th Cir. 2000) (citing *Cooke*, 110 F.3d at 1302).

### C.     Presentation of Witnesses

Gist-Holden also argues the court erred in not allowing him to call certain witnesses in his defense.  [DE 389 at 31.]  Specifically, Gist-Holden claims he requested Anthony Sanders, Katherine Marshall, Jurius Shade, Prem Pajwai, and Ventrel McMillan testify.  [*Id.* at 31-33.]  Gist-Holden moved to compel witnesses for trial under Federal Rule of Criminal Procedure 17, and this court held a lengthy hearing on September 22, 2022, to determine whether the testimony of each proposed witness was both relevant and material to his defense, and appropriate for the court to issue subpoenas and cover the costs and witness fees.  [DE 258, 265, 284.]  The motion was granted as to nine witnesses, including Anthony Sanders and Jurius Shade.  [DE 263, 290.]  The court found good cause to issue subpoenas to Sanders and Shade, and

because Gist-Holden was indigent, the United States Marshal for the Northern District of Indiana would serve the witnesses. [DE 263, 290.] So Gist-Holden was in no way hampered from calling either Sanders or Shade. As to the other three witnesses, according to Gist-Holden, Ventrel McMillian was an out of state recruiting coordinator for the Illini Panthers and could have testified to his dealings with out of state players and "the hate out-of-state players had toward Defendant"; Katherine Marshall would have testified to the rental payments Jack Mitchell, owner of the Buchanan Street home, received from them; and Prem Pajwai would have testified that the hotel rooms were paid in full and King was rarely at the hotel. [DE 389 at 31-32.] As I explained in the Rule 17 hearing, I decided to allow Gist-Holden to subpoena a few character witnesses, and other witnesses with pertinent testimony, but would not allow cumulative testimony on unrelated topics. Gist-Holden has not claimed that any of these witnesses had direct knowledge of his whereabouts on the day of the bank robbery or any pertinent knowledge about the planning and commission of the robbery or the killing of the security guard. Plus, Gist-Holden did call four witnesses in his case in chief: Autumn Burnett, Kelvin Chambers, Andrew Chonowski, and Justin Clark, and he took the stand himself. Given the extensive evidence against Gist-Holden at trial, nothing about the alleged testimony of Marshall, Pajwai, or McMillan would have changed the result of the trial.

### D. Prosecutorial Misconduct

Finally, Gist-Holden argues that prosecutorial misconduct warrants a new trial. [DE 389 at 34.] This is really a catchall argument at the end of his motion, which encompasses all of his other allegations that the government induced perjured testimony at trial and manufactured evidence. A district court has broad discretion in deciding whether to grant a new trial based on prosecutorial misconduct. *United States v. Cheska*, 202 F.3d 947, 949-50 (7th Cir. 2000). The inquiry is two-fold: first, whether there was prosecutorial misconduct; and second, whether it prejudiced the defendant. *United States v. Serfling*, 504 F.3d 672, 677 (7th Cir. 2007). Here, Gist-Holden only speculates about how he thinks the government acted improperly. No evidence supports this mere conjecture, and he has not established there was prosecutorial misconduct.

### Conclusion

For all of the reasons articulated above, Gist-Holden's Motion for New Trial under Federal Rule of Criminal Procedure 33 [DE 389] is **DENIED.**

**SO ORDERED**.

ENTERED: April 10, 2023

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT